# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**THERESA HELTON,**
    **PLAINTIFF**

    **VS.**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**
    **DEFENDANT**

**CASE NO. 1:09CV361**
**(SPIEGEL, J.)**
**(HOGAN, M.J,)**

## REPORT AND RECOMMENDATION

Plaintiff filed her application for Social Security Disability and Supplemental Security Income in August, 2005.  Her application was denied, both initially and upon reconsideration. Plaintiff then requested and obtained a hearing before an Administrative Law Judge (ALJ) in April, 2008 at Cincinnati, Ohio.  Plaintiff, who was represented by counsel, testified as did Vocational Expert (VE) Janet Bending.  The ALJ reached an unfavorable decision in August, 2008 and following that decision, Plaintiff processed an appeal to the Appeals Council, which denied her request for review in April, 2009.  Plaintiff then timely filed her Complaint seeking judicial review in May, 2009.

## STATEMENTS OF ERROR

Plaintiff asserts three Statements of Error: (1)" The ALJ applied the wrong standard and thus improperly found that Listings 1.02 and 1.03 were not met or equaled, (2) The ALJ improperly disregarded the medical opinion of treating physician Dr. Kelly Brown, and (3) There was new and material evidence not available before the ALJ's decision, which warranted remand."

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that she lived alone in an apartment, is 5'4" tall and weighs 220 lbs.  She is right-handed and has a high-school education.  Her income is limited to a Welfare check of $115.00 per month plus food stamps and a medical card.  Her last employment was at Fifth Third Bank in 2004 as a mortgage loan collector.  She was terminated from that job because of excessive absences due to medical problems.  Prior employment was at Macy's in a similar capacity and at Chaffer Catering Company in Delray Beach where she was a receptionist.  Employment prior to Caffer Catering was working on a drywall truck.

In response to the ALJ's request to state all the reasons why she could no longer work, Plaintiff stated that she "can't sleep at night" and has "nightmares," possibly attributed to PTSD or depression, the stimulus for which was chemical burns suffered while a patron at a hair salon.  Plaintiff currently sees therapist Rebecca with Bethesda Family Practice and Kelly Brown, M.D., her primary care physician.

Plaintiff spoke of having "a recurrence of an infection," as well as treatments involving an "antibiotic nail" and "skin grafts," as well as "fluid removal" and six surgeries, at least one of which was for "pinning a bone," which we relate to a problem with her right leg and not to her chemical burn.  She also made reference to seeing Dr. Bingham, whom she no longer sees because of an insurance lapse following her discharge from Fifth-Third Bank.  She denied being terminated from Dr. Bingham's practice because of any violation of a drug policy.  She made mention of being in jail for a DUI, having to go to the hospital from jail and having a "drop foot."  At some point, she was diagnosed with osteomyilitis and used a walker as an ambulatory aid.  Plaintiff testified that her right leg was injured in an automobile accident in June, 2005 and that she has no recollection of the accident because she was intoxicated at the time.

The "infection" about which she previously testified was resolved through the use of IV antibiotics.  She reports leg pain when the weather is cold or damp and that the leg swells upon exertion.  The worst pain is in her lower back, for which she has seen Drs. Cohen and Portgugal, neurosurgeons at Mayfield Spine Institute.  She rates her back pain as a 7.5-8.0 on a 10-point scale and said that movement decreases the pain.  She is currently taking Oxycontin and Percoset

2

for pain, Valium for anxiety, Prozac for depression and Trazadone for sleep.

She has trouble concentrating and is unable to vacuum, mop, do laundry or shop alone. Plaintiff estimated that she could sit for 20-25 minutes, stand for 20 minutes and walk for 1/2 a block. (Tr. 513-551).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ asked the VE to assume Plaintiff could lift 20 lbs. occasionally and 10 lbs. frequently, could frequently stand and walk, could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds, could occasionally stoop, kneel and bend at the waist with legs straight, but never crouch or crawl. The VE responded that Plaintiff could return to her past relevant work as a collecting clerk.

The second hypothetical question asked the VE to assume that Plaintiff could lift 10 lbs. occasionally and 5 lbs. frequently, can sit for 8 hours with stretch breaks every 1/2 hour for 1-2 minutes and occasionally perform all the posturals (assuming Plaintiff could not climb ladders, ropes or scaffolds). The VE responded that Plaintiff could still perform her past relevant work as a collecting clerk as well as perform a number of unskilled and sedentary jobs, such a surveilance system monitor, film touch-up inspector and production service worker, all of which exist in representative numbers in the national economy.

The third hypothetical question asked the VE to assume that in addition to "the physical limitations," which were not further defined as the physical limitations described in the first hypothetical or the second, but apparently the second, the Plaintiff would be able to handle two-step instructions and routine repetitive tasks, could cooperate with supervisors, but would function best with only superficial contact with supervisors, co-workers and the public. In addition, Plaintiff should avoid a constant rapid pace. The VE responded that the Plaintiff would not be able to return to her past relevant work, but could perform a limited range of sedentary and unskilled jobs.

The fourth hypothetical assumed the accuracy of Plaintiff's testimony. The VE responded that no jobs would be available.

3

## THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff has the following impairments: (1) history of a right fibula and tibia fracture, (2) history of right lower extremity cellulitis and osteomyelitis, (3) lower back pain, (4) left plantar fascitis with bone spur, (5) post traumatic stress disorder and depression. The ALJ found all of these impairments to be severe, but none to meet any Listing, either alone or in combination. The ALJ found that Plaintiff had the residual functional capacity as set forth in his third hypothetical question to the VE, however the ALJ also found that Plaintiff had the residual functional capacity to walk for 30 minutes at a time and for a total of 2 hours in an 8-hour day. The above walking assessment was not contained in the hypothetical question asked of the VE. The ALJ found that Plaintiff was able to perform a number of sedentary and unskilled jobs, such as surveilance monitor, inspector, general production service worker, hand packer and paramutual ticket taker. The ALJ found Plaintiff not disabled and therefore unable to share in the Soocial Security fund.

## THE MEDICAL RECORD

Plaintiff saw Michael Paris, M.D., a psychiatrist, in April, 1998, following an injury suffered at a hair salon in March, 1998. Plaintiff complained of anxiety, nightmares, fearfulness and insomnia. She suffered a physical injury, a burned scalp as well as a swollen face and eyes. She worked at a bakery at the time and felt that her "face would explode like a loaf of bread." Dr. Paris stated that Plaintiff needed therapy sessions at the rate of one or two times per week for 1-2 years, that the treatment regime included prescriptions for Valium and Paxil, and that the diagnosis was "Posttraumatic Stress Disorder - Chronic." His prognosis was that "she will unlikely regain all of her social competence and confidence, but will eventually (two to five years) be able to accomplish social tasks with only a mild risk of anxiety relapse." A subsequent correspondence clarified that the treatment relationship with Dr. Paris ended in April, 2001. (Tr. 147-150).

Office records from Marc Schneider, M.D., an orthopaedic surgeon, show that James

4

Bingham, M.D. referred Plaintiff to Dr. Schneider for left hip pain. Dr. Schneider reported that Plaintiff had a "full range of motion" in the left hip and lumbar spine, but a "positive left straight leg raise." She has "increased pain with flexion and extension," but her "lower extremities are neurovascularly intact: and exhibit normal strength." X-rays of the left hip showed "no acute abnormalities," but there were "some mild degenerative changes at L4-5 and L5-S1 and mild loss of joint space." Dr. Schneider felt Plaintiff's pain was referred from the lumbar spine. In May, 2003, Dr. Schneider reported that an MRI showed a small left paracentral disc protrusion at L5-S1 with mild flattening of the thecal sac, impinging on the left S1 nerve root." (Tr. 153- 156).

Records from University Hospital in November, 2005, show that Plaintiff was transferred there from jail on a complaint of right ankle pain, following fractures to her right tibia and fibula in June, 2005. She had just resumed walking after the injury and complained of a burning pain. An orthopaedic consultation and x-ray, showing "diffuse osteoporosis" resulted in a prescription for Neurontin. (Tr. 157-159).

The Operative Report from University Hospital showed that Plaintiff's open, lower right leg fractures were surgically treated previously and the treatment also involved a subsequent insertion of a skin graft in July, 2005 by Michael Archdeacon, M.D., an orthopaedic surgeon. (Tr. 228-231). Dr. Archdeacon surgically repaired the fractured tibia and fibula in June, 2005.at University Hospital. The hospital records indicated that Plaintiff was involved in an automobile accident and was intoxicated upon admission. She suffered from post-surgical foot drop. In January, 2005, Plaintiff was treated at University Hospital for a forehead laceration sustained in a second automobile accident. Dr. Autumn Graham sutured the wound and advised it would constitute a "cosmetic deformity." (Tr. 165- 231).

Plaintiff was evaluated by Carla Dreyer, Psy. D., a clinical psychologist, in November, 2005. The history taken by Dr. Dreyer indicated that Plaintiff injured her back in a lawn-mowing accident, which also damaged her foot. Plaintiff also told of the rear-end collision resulting in a head laceration and of the chemical burn to her scalp, which resulted in post-traumatic stress disorder. Plaintiff talked about panic attacks, mood swings, inability to sleep and fear of leaving her protective environment. Dr. Dreyer's diagnosis was "Posttraumatic Stress Disorder - chronic, Panic Disorder with Agoraphobia and an Adjustment Disorder." She

assigned a GAF of 55-60 and found that Plaintiff had "moderate impairment" of her ability to relate to others; understand, remember and follow simple instructions; maintain attention, persistence and pace; and withstand stress. (Tr. 232-237).

Caroline Lewin, either a clinical psychologist or a psychiatrist, provided a paper review of Plaintiff's medical record as of November, 2005. Dr. Lewin felt that Plaintiff had an Adjustment Disorder and an Anxiety Disorder. Dr. Lewin also determined that Plaintiff had "moderate limitations of her ability to perform the activities of daily living; maintain social functioning; and maintain concentration, persistence or pace. Dr. Lewin's opinion was that there were one or two episodes of decompensation. Dr. Lewin's narrative is as follows:

> "Her concentration will be adequate, but not optimal for most tasks. She should have no problem with two-step instruction, although detailed ones might be a challenge. She will be able to cooperate with supervision, but may function best where only superficial relating with co-workers and the public is needed. She will do best in a low stress setting where occasional extra breaks would be possible. Basic tasks are within her mental capacities." (Tr. 239-257).

Gary Hinzman, M.D., performed a physical residual functional capacity assessment in January, 2006. Dr. Hinzman opined that Plaintiff could occasionally lift 20 lbs. and frequently lift 10 lbs., stand/walk for 6 hours in a workday and sit for 6 hours. Dr. Hinzman noted that Plaintiff had degenerative disc disease of the lumbar spine and disc protrusion at L5-S1. Prior to suffering the right leg fracture in June, 2005, Plaintiff had a normal gait, strength and neurological examination with no radicular findings. She developed right foot drop after the surgery to repair the fracture. Dr. Hinzman's opinion was that Plaintiff could occasionally climb stairs, but never ropes, ladders or scaffolds, could occasionally stoop or kneel, but never crouch or crawl. Ankle strength and ability to ambulate were improving. (Tr. 257-269).

There is a note in April, 2006 from J.G. Bingham, M.D. that Plaintiff was "fired" in November, 2005 from his practice. Dr. Bingham was not more specific. The ALJ questioned Plaintiff about this note during the hearing because of a suspected violation of the office's drug policy. Plaintiff responded that she was "fired" for lack of insurance and inability to pay. (Tr. 270, 525).

6

Keith Zurmehly, P.A. reported in September, 2006 that Plaintiff was discharged from University Hospital after a bout with osteomyelitis and the placement of an antibiotic nail for a bone infection. Zurmehly, associated with the practice of Bart Branam, M.D., observed that the "wound has healed over and looks very good." Removal of the antibiotic nail was scheduled. (Tr. 294).

The antibiotic nail was placed in October, 2006 by John Wyrick, M.D. Following surgery, Plaintiff was placed on IV antibiotics. Normal rehabilitation schedule was to be toe-touch for 2 weeks after cultures are negative and then gradual weightbearing for an additional 2 weeks. (Tr. 320-321). After the removal of the antibiotic nail, Plaintiff again suffered an infection of the right tibia. She was administered Ancef IV and overnight her erythema improved.. The therapy was continued through a PICC line for several weeks. (Tr. 335-336).

University Hospital records from October, 2006 show that the automobile accident, which caused the initial lower right leg fracture, occurred one year previous and that during the intervening period, Plaintiff had 5 reconstructive surgeries, the last of which involved the insertion of an antibiotic nail. After the removal of the nail, Plaintiff suffered from redness and swelling over the site of the staples. She was diagnosed with cellulitis and admitted because of a prior problem with osteomyelitis. (Tr. 340-342). The "right tibial intramedullary rod" was removed and the antibiotic nail inserted in October, 2006 at University Hospital. (Tr. 360-367). Plaintiff had a skin graft, referred to as a "flap" because of a lack of tissue coverage after the initial surgery. Intravenous antibiotics were prescribed. (Tr. 371).

University Hospital records indicate that in May, 2007, Plaintiff was reported to be "minimally symptomatic." She was able to walk without a limp. There was no swelling or tenderness.. The skin graft was well healed and she had a full range of motion of the knee and ankle. (Tr. 395). In April, 2007, Alexander Trott, M.D., an orthopaedic surgeon, reported that Plaintiff was "doing fine," and that an x-ray "suggested no findings of osteomyelitis" in either the ankle or right lower leg. (Tr. 399-400).

Kelly Brown, M.D. is Plaintiff's primary care physician. Dr. Brown reported in April, 2008 that she has seen Plaintiff on a bi-monthly basis since January, 2007 and has diagnosed her with depression, post-traumatic stress disorder and chronic low back and right leg pain. Dr.

Brown also reported that in addition to chronic pain, made worse by extended sitting, standing and walking, Plaintiff suffers from fatigue, disturbed sleep, night tremors and flashbacks. Dr. Brown reported that Plaintiff has a "severely scarred right leg with residual lymphatic drainage problems" and low back muscle spasms with decreased range of motion. Plaintiff's prescribed medications are Oxycontin, Percocet and Diazapam for pain and muscle spasm, and Trazadone and Fluoxetine for post-traumatic stress disorder. Dr. Brown's opinion was that Plaintiff's depression and anxiety negatively affect her physical condition and that Plaintiff's pain would frequently interfere with her ability to attend and concentrate. She was felt to be capable of low stress jobs. Dr. Brown's opinion was that Plaintiff could sit for 30 minutes at a time and stand for 20 minutes at a time, but her limit for an 8-hour day would be less than 2 hours for standing and about 4 hours for sitting. She must walk for 5 minutes every 20 minutes and must be allowed to shift positions at will. If given a sedentary job, Plaintiff would need to elevate her leg at 30 degrees 75% of the time. She can frequently lift 10 lbs. and occasionally lift 20 lbs., but should never lift 50 lbs. She can occasionally twist, rarely stoop or climb stairs, and never climb ladders or squat. She is likely to be absent from work more than 4 days per month because of her impairments. Dr. Brown's opinion was that "Plaintiff has frequent flashbacks, anxiety attacks and depression that would significantly decrease the patient's ability to work at a regular job on a *sustained* basis." (Emphasis in original). (Tr. 409-413).

Plaintiff consulted Mayfield neurosurgeon Jesse Portugal, M.D. in April, 2008 for chronic low back pain. An MRI from January, 2007 showed "L5-S1 with moderate disc dessication, mild disc narrowing and a left paracentral disc protrusion with facet hypertrophy and L4-5 with diffuse disc bulge and facet hypertrophy." Plaintiff was, at the time, in physical therapy and using a TENS unit. Dr. Portugal recommended continuing physical therapy. Epidural steroid injections were considered, but rejected because Plaintiff had experienced negative side effects from steroids in the past. (Tr. 415-421).

An MRI of the lumbar spine, completed in January, 2007, showed "(1) broad based paracentral foraminal disc protrusion and spur formation, L5-S1 level, resulting in moderate to severe narrowing of the left neural foramen; mild central spinal stenosis is present at this level as well; (2) diffuse disc protrusion, circuiferential, marginal osteophyte formation and facet

8

hypertrophy, L4-5 disc level, resulting in a mild degree of acquired central spinal stenosis;  (3) diffuse annular bulge L1-2 disc level, without significant central spinal stenosis.' (Tr. 421).

Plaintiff was in counseling with therapist, Rebekeh Pershing, at Behavioral Health for approximately 1 year from June, 2007 to June, 2008.  During these sessions, Plaintiff discussed her tendency toward emotional extremes, her depression over the loss of a loved one, facing fears, anger and worry, inability to sleep, racing thoughts, low motivation and energy, nightmares, feelings of guilt, anxiety, irrational ideas and unreasonable expectations.  Plaintiff's greatest source of distress was guilt, irrational fears, panic attacks and her feeling of physical weakness and feeling that her mind was not working correctly.  The therapist made a number of behavioral suggestions for Plaintiff to consider, but declined to objectively rate Plaintiff's level of impairment because to do so would require objectivity, something therapists may not be able to provide because of their treatment relationship with the patient.   (Tr. 472-506).

## OPINION

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.  The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act.  42 U.S.C. §§ 416(i), 423.  Establishment of a disability is contingent upon two findings.  First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).  Second, the

9

impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The Commissioner is required to consider plaintiff's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 404.1525(a). If plaintiff suffers from an impairment which meets or equals one set forth

10

in the Listing, the Commissioner renders a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff's impairment need not precisely meet the criteria of the Listing in order to obtain benefits. If plaintiff's impairment or combination of impairments is medically equivalent to one in the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. § 404.1526(a). The decision is based solely on the medical evidence, which must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(b).

If plaintiff's alleged impairment is not listed, the Commissioner will decide medical equivalence based on the listed impairment that is most similar to the alleged impairment. 20 C.F.R. § 404.1526(a). If plaintiff has more than one impairment, and none of them meet or equal a listed impairment, the Commissioner will determine whether the combination of impairments is medically equivalent to any listed impairment. *Id.*

The grid is designed for use when the alleged impairment manifests itself through limitations in meeting the strength requirements of jobs. 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). If plaintiff suffers solely from nonexertional impairments, the grid is inapplicable and the Commissioner must rely on other evidence to rebut plaintiff's prima facie case of disability. *Id.*, § 200.00(e)(1). Nonexertional impairments include "certain mental, sensory, [and] skin impairments" as well as "postural and manipulative limitations [and] environmental restrictions." 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). Where a plaintiff suffers from an impairment or a combination of impairments that results in both exertional and nonexertional limitations, the grid is consulted to see if a finding of disability is directed based upon the strength limitations alone. If not, the grid is then used as a framework and the Commissioner examines whether the nonexertional limitations further diminish plaintiff's work capability and preclude any types of jobs. *Id.*, § 200.00(e)(2). If an individual suffers from a nonexertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Commissioner may use the grid as a framework for a decision, but must rely on other evidence to carry his burden.

11

*Abbott v. Sullivan*, 905 F.2d 918, 926-27 (6th Cir. 1990); *Damron v. Secretary of H.H.S.*, 778 F.2d 279, 282 (6th Cir. 1985); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528-29 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). The existence of a minor nonexertional impairment is insufficient to preclude use of the grid for directing a decision. Rather, plaintiff must demonstrate that the nonexertional impairment "significantly limits" his ability to do a full range of work at the appropriate exertional level in order to preclude a grid based decision. *Atterberry v. Secretary of H.H.S.*, 871 F.2d 567, 572 (6th Cir. 1989); *Cole v. Secretary of H.H.S.*, 820 F.2d 768, 771-72 (6th Cir. 1987); *Kimbrough v. Secretary of H.H.S.*, 801 F.2d 794, 796 (6th Cir. 1986).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson v. Secretary of H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson*, 735 F.2d at 964; *Kirk*, 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.,* 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v.*

12

*Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky*, 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985)(citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

A treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). A summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. *Cornett v. Califano*, No. C-1-78-433 (S.D. Ohio Feb. 7, 1979) (LEXIS, Genfed library, Dist. file). A physician's statement that plaintiff is disabled is not determinative of the ultimate issue. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). While the Commissioner may have expertise in some matters, this expertise cannot supplant the medical expert. *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963); *Lachey v. Secretary of H.H.S.*, 508 F. Supp. 726, 730 (S.D. Ohio 1981).

It is the Commissioner's function to resolve conflicts in the medical evidence and to determine issues of credibility. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The Commissioner's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v.*

14

*Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990). The Commissioner must state not only the evidence considered which supports the conclusion but must also give some indication of the evidence rejected in order to facilitate meaningful judicial review. *Hurst v. Secretary of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). *See also Shelman v. Heckle*r, 821 F.2d 316, 321 (6th Cir. 1987).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).

The first Statement of Error asserts that the ALJ erred in determining that Listings 1.02(A) and 1.03 were not met. Listing 1.02(A) requires that a claimant demonstrate: (1) a major dysfunction of a joint characterized by gross anatomical deformity, (2) chronic joint pain and stiffness, (3) signs of limitation of motion, (4) findings on appropriate medically acceptable imaging of either joint space narrowing, bony destruction or ankylos, (5) involvement of either the hip, knee or ankle, and (8) resulting in inability to ambulate effectively. Listing 1.03 requires that a claimant demonstrate (1) reconstructive surgery of a major weight-bearing joint (hip, knee or ankle), (2) inability to ambulate effectively, and (3) the return to effective ambulation did not occur or was not expected to occur within a 12-month period.

The phrase "inability to ambulate effectively" is defined to mean:

"an extreme limitation of the ability to walk. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities.

In like manner, "to ambulate effectively" is defined as meaning:

the ability to "sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living" or the ability to "travel without companion assistance to or from a place of employment or school."

Although we appreciate the Plaintiff's calling our attention to the fact that starting to walk and putting weight on a previously fractured limb does not equate to "ambulating effectively" as that term is defined, neither Listing 1.02(A) or 1.03 is met unless a major weight-bearing joint is involved and neither the fibula nor tibia are joints, but, are, in fact, bones. Accordingly, neither Listing 1.02(A) nor 1.03 were met. The First Statement of Error, insofar as it addresses meeting either Listing has no merit. However, Plaintiff asserts that she equaled both Listings, and to do so, requires proof that the impairments were medically analogous, in other words, that the fractures of the two lower leg bones and the subsequent problems with cellulitis and osteomyelitis, infection and skin graft are medically analogous to a situation where a major weight-bearing joint was surgically reconstructed. That argument is plausible and should

16

be reconsidered using the correct definition of "effective ambulation." A remand on this issue should occur, especially in light of the vague assessment of Plaintiff's ability to walk/stand communicated to the VE.

The Second Statement of Errors faults the ALJ for discounting the opinion of Dr. Kelly Brown, who was Plaintiff's primary care doctor and a treating physician by definition. The ALJ gave Dr. Brown's opinion "no weight" because "Dr. Brown's physical limitations are markedly inconsistent with the treatment notes made from the specialists mentioned above (only Dr. Portugal was "mentioned above") regarding both the claimant's right leg and lower back pain." A second reason for giving Dr. Brown's opinion no weight was that "there is no substantial evidence that the Plaintiff suffers from post-traumatic stress disorder and/or depression to a disabling degree."

Plaintiff saw psychiatrist, Dr. Paris, in 1968 after sustaining the chemical burn at the salon. Dr. Paris diagnosed her with post-traumatic stress disorder and treated her for an approximate period of 2 years. There was a physical injury, from which Plaintiff recovered. Dr. Paris thought it would take years for Plaintiff to recover social skills. Plaintiff was then evaluated in 2005 by Dr. Dreyer, who agreed with the previous diagnosis, and rated the resulting impairment in all categories of work-related mental impairments as imposing "moderate" limitations. Dr. Lewin performed a paper review in late 2005 and agreed with the functional limitations placed by Dr. Dreyer, although her diagnosis was Adjustment and Anxiety Disorder. Dr. Brown, an internist and Plaintiff's primary care physician, stated her opinion that frequent flashbacks, anxiety attacks and depression would "significantly decrease" the Plaintiff's ability to "work on a sustained basis" and that she would miss work at a rate known to be unacceptable to employers.

The ALJ had to evaluate conflicting opinions of four experts, two of which were treating sources, one a testing, but non-treating source and one, a paper reviewer. Dr. Paris made no functional analysis. Dr. Dreyer, an examining source, did, and her limitations or restrictions were accepted by the paper reviewer, Dr. Lewin. Dr. Brown's opinion was not consistent with either and was also inconsistent with her own findings in reference to Plaintiff's "left leg," when it is obvious that her right leg was the injured leg. The latter was probably a clerical mistake, but

17

it could have been sufficient to cause the ALJ to adopt what was the prevailing view that Plaintiff's post-traumatic stress disorder resulted in no marked or extreme mental limitations. Further, the suggestions made by Dr. Lewin, such as a low stress job with limited contact with others, were adopted in the residual functional assessment made by the ALJ. We find no error in the ALJ's rejection of the opinion of Dr. Brown.

The last Statement of Errors is that there was new and material evidence not available at the time of the hearing or before the record was closed and that evidence warranted a remand. The evidence Plaintiff is referring to are the therapy notes from Rebecca Pershing at Bethesda Family Practice from July 9, 2007 through June 26, 2008. Plaintiff claims that these notes support Dr. Brown's opinion regarding the limitations or restrictions imposed relative to Plaintiff's residual functional capacity.

The records reflect that Plaintiff discussed a number of problems she was experiencing, such as irrational fears of driving and dying, a tendency to perceive extremes, rather than middle ground, anxiety attacks brought on by minor things, a tendency to worry, insomnia, depression, nightmares, stress and anxiety. Plaintiff perceived that her main sources of emotional distress were irrational fears, feeling uneasy in crowds, panic attacks and chronic pain. Therapist Pershing made a number of helpful suggestions and seemed focused on cognitive restructuring, deep breathing and other relaxation techniques. The therapist did support the diagnosis of post-traumatic stress disorder. Plaintiff's stressors seemed to be her orthopaedic problems related to her low back and right lower leg, her financial difficulties related to unemployment and the death of several persons close to Plaintiff. Her strengths appeared to be her close family relationships and her college education. What therapist Pershing failed to, and in fact, refused to, do was state an objective opinion relative to the residual functional capacity resulting from these various impairments. The therapist felt that the therapeutic relationship precluded such behavior, since she was an advocate and not an evaluator.

If the evidence from Bethesda Family Practice had been before the ALJ when he made his decision, it may have provided a basis for a different opinion. Dr. Paris, the psychiatrist Plaintiff initially saw after suffering the chemical burn, diagnosed her with post-traumatic stress disorder and felt she would need years of therapy to regain her social skills. The

mental/emotional limitations which Dr. Brown imposed were somewhat corroborated by both Dr. Paris and by therapist Pershing, although opposed by Drs. Dreyer and Lewin.

When a plaintiff presents evidence to the Appeals Council but not to the ALJ, ("additional evidence") and the Appeals Council considers the additional evidence but declines to review the plaintiff's claim, the District Court may not consider that additional evidence, unless all the requirements of a remand under sentence six of 42 U.S.C. § 405(g) have been met. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). In *Cotton*, the Sixth Circuit adopted the Seventh Circuit's rationale in *Eads v. Secretary of H.H.S.*, 983 F.2d 815 (7th Cir. 1993) that when the Appeals Council declines review, it is the decision of the ALJ and therefore the facts which were before the ALJ that are subject to appellate review. *Cotton*, 2 F.3d at 695-96. In a sentence six remand, the Court does not rule on the correctness of the administrative decision. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 174 (6th Cir. 1994), *citing Melkonyan*, 501 U.S. 89.

The Court may remand a case to the Commissioner for consideration of additional evidence only if the party seeking remand demonstrates that 1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing and 2) this evidence is new and material. 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163, 2165 (1991); *Willis v. Secretary of H.H.S.*, 727 F.2d 551, 553-54 (6th Cir. 1984).

To show good cause, the moving party must present a valid justification for the failure to have acquired and presented the evidence in the prior administrative proceeding. *Oliver v. Secretary of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986); *Willis*, 727 F.2d at 554.

To be "material" within the meaning of § 405(g), the new evidence 1) must be relevant and probative to plaintiff's condition prior to the Commissioner's decision and 2) must establish a reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered. *Sizemore v. Secretary of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver* , 804 F.2d at 966. New evidence on an issue already fully considered by the Commissioner is cumulative, and is not sufficient to warrant remand. *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980); *Thomas v. Schweiker*, 557 F. Supp. 580, 582 (S.D. Ohio 1983) (Spiegel, J.). Evidence that plaintiff's condition has deteriorated since the Commissioner's

decision is not material. *Sizemore*, 865 F.2d at 712; *Oliver*, 804 F.2d at 966. If plaintiff has experienced serious deterioration since the Commissioner's decision, the appropriate remedy is to file a new application. *Sizemore*, 865 F.2d at 712.

Plaintiff's argument in this respect focuses on the date counsel was retained, March 21, 2008, a period of two weeks prior to the hearing before the ALJ on April 8, 2008. Defendant argues that Plaintiff requested, and the ALJ granted, a request that the record remain open until August 10, 2008 to submit additional evidence. No new evidence was submitted within the period requested and no request to extend the time past August 10, 2008 was ever made. The ALJ, believing that the record was closed, made his decision on August 19, 2008. The new evidence was submitted in February, 2009. We have no reason to dispute Plaintiff's assertion that the new evidence was unavailable until after the ALJ made his decision. However, it seems unreasonable to ask the ALJ to keep the record open past the time requested by Plaintiff and an inefficient practice for the ALJ to delay a decision indefinitely.

Although it is plausible that the new evidence would have made a difference, there was not good cause for its submission after the record had closed at the expiration of the time requested by Plaintiff.

For the reasons stated above, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed. Because we believe Plaintiff's First Statement of Error, namely that she equaled Listings 1.02(A) and 1.03, has arguable merit in light of the ALJ's improper application of the definition of effective ambulation and his vague hypothetical relative to Plaintiff's ability to walk/stand, we recommend a reversal and remand for further consideration by the ALJ.

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits. *Faucher*, 17 F.3d at 176. This matter should be remanded for further proceedings, including a determination as to whether Plaintiff's impairments equal Listings 1.02(A) and 1.03, and more specifically, whether the fractures of the two lower leg bones and the subsequent problems with cellulitis and osteomyelitis, infection and skin graft are medically

analogous to a situation where a major weight-bearing joint was surgically reconstructed; and further vocational considerations consistent with this decision.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be REVERSED and REMANDED for further proceedings pursuant to Sentence Four of 42 U.S.C. s 405(g).

July 28, 2010

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\HOGANTS\Helton.wpd